# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-2050V

|  |  |
|---|---|
| LESLIE ANDERSEN,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: July 27, 2023<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Statutory Six Month<br>Requirement Influenza (Flu) Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On December 30, 2020, Leslie Andersen filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine she received on October 18, 2019. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not suffered the residual effects of her alleged vaccine-related injury for more than six months, and

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

that she has satisfied the other requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

On April 5, 2022, about 16 months after the case was initiated, Respondent filed a status report with his counsel's informal assessment, in which counsel raised the issue of whether Petitioner had provided sufficient evidence to satisfy the "severity requirement." ECF No. 25. I ordered Petitioner to provide additional evidence, including medical records and/or affidavits, and briefing on the issue of severity. Petitioner filed her brief on September 15, 2022 ("Br."), along with an Amended Petition and an affidavit by Petitioner. ECF No. 30, 32-33. Respondent filed a response brief on October 31, 2022 ("Resp."). ECF No. 34. Respondent filed a Rule 4(c) Report contesting entitlement on March 13, 2023. ECF No. 37.

The matter is now ripe for adjudication.

## II.    Factual History

Although Petitioner briefly attended physical therapy for left shoulder pain in 2016, her medical records do not reveal any other left shoulder issues. Ex. 6 at 20-21; Ex. 13 at 9-10. Three years later, Petitioner received the flu vaccine in her left deltoid on October 18, 2019, at a CVS Pharmacy in Greenwich, CT. Ex. 1 at 3. At the time of her vaccination, Petitioner had maintained "a high level of fitness," with swimming, weightlifting, biking, and golfing. Ex. 18 at ¶2. Petitioner recalled that she "yelped in pain" when given the injection and within two hours could barely lift her arm. *Id*. at ¶4-5.

On October 23, 2019 (five days after vaccination), Petitioner presented to her orthopedist complaining of left shoulder pain. Ex. 6 at 53. She described severe pain at the time of the vaccination and an inability to move her arm. *Id*. X-rays were normal. *Id*. Petitioner was prescribed a Medrol Dosepak. *Id*. at 55. On October 31, 2019, Petitioner was prescribed voltaren gel and referred to physical therapy. *Id*. at 20, 60. She thereafter attended four sessions of physical therapy (November 13, November 26, December 12, 2019, and February 3, 2020). Ex. 4 at 7-13. Petitioner has stated that she had to stop in-person physical therapy due to the Covid-19 Pandemic. Ex. 18 at ¶13.

On January 29, 2020, Petitioner returned to her orthopedist. Ex. 6 at 23. Petitioner reported that her pain had improved, but that she still had consistent pain, particularly with movement, and weakness. *Id*. On exam, she displayed reduced range of motion and pain with movement and strength testing. *Id*. An MRI was ordered. *Id*. A February 10, 2020, MRI revealed a likely full-thickness tear of the supraspinatus tendon, AC joint arthropathy, a SLAP tear, and bursitis. *Id*. at 51-52.

On March 5, 2020, Petitioner returned to her orthopedist and received an ultrasound guided steroid injection to her left shoulder. Ex. 6 at 34. She had a follow-up telemedicine appointment on April 6, 2020, when she reported that she got some, but not complete, improvement from the injection. *Id*. at 29. She reported being able to "do a bit more" but had continued, persistent pain with exercising. *Id*. On exam, Petitioner showed pain with movement, including end range external rotation, internal rotation, arm, and a "Hawkins type maneuver." *Id.* She was prescribed voltaren gel. *Id*. Petitioner recalled being advised to continue her home exercise program and to use a tens machine on her shoulder. Ex. 18 at ¶13. She stated she continued this home treatment through June 2020. *Id*. At the beginning of 2021, Petitioner began to lift weights, which caused her pain to worsen. *Id*. at ¶15.

On January 11, 2021, Petitioner visited her primary care provider ("PCP") for an annual exam. Ex. 12 at 17. Petitioner reported a broken toe, her cataract surgery, her blood pressure, and constipation. *Id*. There is no mention in the history or physical exam of Petitioner's left shoulder, but there is a note in the assessment and plan that Petitioner had a "non-traumatic partial tear of left rotator cuff," "due to vaccination," which was "not yet back to normal." *Id*. at 18-19.

Petitioner returned to her orthopedist on March 12, 2021, with continuing left shoulder pain and "limited high-level function" of the shoulder. Ex. 9 at 15. She noted that the steroid injection she received had "helped, but not fully." *Id*. The records note that Petitioner was "still in pain from the flu vaccine she received at CVS." *Id*. A repeat injection was recommended and Petitioner was referred back to physical therapy. *Id*. at 15, 9.

There is a subsequent and nearly three-month treatment gap specific to the alleged injury in this case. Then, on June 4, 2021, Petitioner called her orthopedist to report new onset right shoulder pain. Ex. 9 at 13. She continued to treat her right shoulder thereafter. There are no further records of treatment for Petitioner's left shoulder.

During the period between April 6, 2020 (five months and 19 days after her vaccination) and January 11, 2021, Petitioner sought care for a variety of issues other than her shoulder, including: vertigo on May 4, 2020 (Ex. 10 at 31-35); TMJ/left foot pain on June 9, 2020 (Ex. 10 at 27-31); abnormal liver function on June 15, 2020 and June 26, 2020 (Ex. 10 at 20-27); and high blood pressure, dizziness and constipation on August 25, 2020 (Ex. 10 at 16-19). Petitioner also had cataract surgery in June 2020, a mammogram on August 18, 2020, a follow-up with her cardiologist on August 14, 2020, and her annual gynecological exam on October 8, 2020. *See* Ex. 2 at 2; Ex. 5 at 138; Ex. 7 at 620, 640.

3

### III.     Applicable Legal Standards

The Vaccine Act requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to

document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.   Finding of Fact - Severity

To establish six months of residual effects, Petitioner must demonstrate that her symptoms more likely than not continued until at least April 18, 2020. The record establishes at a minimum that Petitioner had continuous treatment for her injury through her telemedicine appointment on April 6, 2020 – five months and 19 days after her vaccination. Respondent argues that Petitioner has not provided preponderant evidence that her injury lasted beyond this date, because there was no mention of her shoulder pain in her medical records between April 6, 2020 and March 12, 2021, despite several intervening appointments for both urgent and routine medical treatment. Rule 4(c) Report at 10-11. However (and although I agree that the record is thin on this issue), I find there is bare preponderant support for six-plus months of severity.

At the time of her April 6, 2020 visit with her orthopedist, Petitioner continued to report ongoing pain particularly with exercise. Ex. 6 at 29. She reported improvement from her steroid injection, but not "complete improvement." *Id*. An exam revealed Petitioner's pain with external and internal rotation, arc of motion, and a "Hawkins type maneuver." *Id*. She was prescribed voltaren gel for her pain and recalled the doctor advising her to continue with her home exercise program and treatment with a tens machine. *Id.*; Ex. 18 at ¶7. She stated that she continued that home treatment through June 2020. Ex. 18 at

¶7. Thus, this representation bulwarks the contention that her condition was not resolved in April, even if Petitioner sought no specific third-party treatment for a long period after.

Petitioner also argues that the gap in treatment for her shoulder pain "corresponds to the most severe portion of the Covid-19 pandemic and concomitant lock down." Br. at 6.³ Respondent accurately observes in reaction that Petitioner continued to seek treatment for other medical issues, as well as routine wellness care, during this period, and that Petitioner had an established habit of seeking care when she needed it – even during the height of the Pandemic. Rule 4(c) Report at 10-11. But no matter how well-founded this point is, Respondent is in error in suggesting that severity can *only* be established by evidence of actual treatment events after.

Rather, Petitioner's treatment history allows the inference that she experienced ongoing sequelae through the latter part of April 2020. Petitioner continued to demonstrate a need for physical therapy, and the record contains no indication that she was ever discharged from care. Further, the record of Petitioner's April 6, 2020 orthopedist visit documents continued pain with movement, both reported by Petitioner and on exam. *Id*. at 29. It is simply more likely than not that Petitioner's documented symptoms continued through the following 12 days (and Petitioner stated that she did not begin to see improvement until June 2020). Ex. 18 at ¶13.

The next visits cited by Respondent were in June 2020, when Petitioner stated her shoulder symptoms had begun to improve. *See* Ex. 18 at ¶13. Petitioner further stated, however, that at the beginning of 2021 she began to lift weights, which caused her pain to worsen. *Id*. at ¶15. This exacerbation in her symptoms corresponds to the next records of treatment for Petitioner's shoulder pain – the reference in her January 11, 2021 record of her annual physical and her return to her orthopedist on March 12, 2021. While arguably these treater visits are a product of non-vaccine caused exacerbation, they do not defeat a finding of severity based on other records, as discussed above.

Respondent relies on *Adkins v. Sec'y of Health & Human Servs.*, No. 20-0813V, 2022 WL 1134998 (Fed. Cl. Spec. Mstr. Mar. 24, 2022) to support his argument regarding Petitioner's gap in shoulder treatment. Rule 4(c) Report at 11-12. The severity

---

³ In particular, she alleges that she "had to stop in-person physical therapy" due to the Pandemic. Ex. 18 at ¶13. This point is better supported by the record (even though I do not find she could not have obtained shoulder treatment later, during the time Petitioner was seeing other providers). Thus, Petitioner had attended four physical therapy treatments between November 13, 2019 and February 3, 2020. Ex. 4. The record from Petitioner's February 3, 2020 physical therapy appointment reveals continued range of motion and strength deficits. *Id*. at 13. After those four treatments, Petitioner had not come close to completing the 6-week, 12-18 visit, course of treatment that was prescribed. Ex. 6 at 20. All of the above (corroborated by the April records) explains why Petitioner might not have completed PT.

requirement was not met in that case where the petitioner had one medical visit a week after her vaccination and then no further treatment for 17 months, with at least ten intervening medical appointments for other conditions. *Adkins*, 2022 WL 1134998 at *2. In contrast, Ms. Andersen treated her shoulder injury consistently for five months and 19 days, with evidence of continuing symptoms despite the treatment gap. The fact that a petitioner did not receive medical treatment continuously does not necessarily mean that there are no remaining residual effects of the injury. *See Morine v. Sec'y of Health & Human Servs.,* No. 17-1013V, 2019 WL 978825 (Fed. Cl. Spec. Mstr. January 23, 2019).

Thus, after consideration of the entire record, I find that the evidence preponderates in Petitioner's favor on this issue. The medical records, when paired with Petitioner's affidavit, provide preponderant evidence that Petitioner suffered the residual effects of her vaccine injury through the end of April 2020, which is more than six months after her vaccination. Of course, the gap in treatment and evidence of a relatively brief and mild SIRVA overall may impact the damages she is awarded for her injury, but that is a separate question from whether severity generally has been established under the Act.

**V.     Ruling on Entitlement**

    *a.  Requirements for Table SIRVA*

Respondent has not contested Petitioner's proof on the specific elements of a Table SIVRA. Rule 4(c) Report at 9. In fact, Respondent states that "here, there is preponderant evidence in the contemporaneous medical records that Petitioner's pain occurred within 48 hours after receipt of an intramuscular vaccination; her pain was limited to the shoulder in which the vaccine was administered; she had no history of shoulder pain that would explain her symptoms occurring after vaccine injection; and no other condition or abnormality has been identified to explain Petitioner's shoulder pain." *Id.*

In light of Respondent's position and the evidence of record, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

    *b.  Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received an influenza vaccination in her left deltoid on October 18, 2019 at a CVS Pharmacy in Greenwich, CT. Ex. 1 at 3.; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 16 at 2; *See* Section 11(c)(1)(E) (lack of prior civil award). And as noted above, severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master